UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELICIA EASTER, et al., | ) | Case No. 5:02 CV 0684 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |

Plaintiff Felicia Easter filed this action under 7 U.S.C. §2023 requesting judicial review of the administrative determination of the United States Department of Agriculture Food and Nutrition Services [FNS] decision to permanently disqualify Ms. Easter and Felicia's Cash and Carry from the program. The defendant government counterclaimed under the False Claims Act (31 U.S.C. §3729-3731) alleging that Vernell Easter's redemption of food stamps constituted false claims for payment attributable to plaintiff, and further that plaintiff committed fraud and was unjustly enriched.

The issues were tried to the court and as directed, both parties submitted proposed findings of fact and conclusions of law.

Ms. Easter acknowledges that the basis for disqualification was the fact that her uncle, Vernell Easter, was investigated by FNS and convicted by the Summit County Court of Common Pleas for illegal use of food stamps, a felony of the third degree. Felicia Easter was duly notified by the United

5:02 CV 0684                                                   2

States Department of Agriculture that her firm Felicia's Cash and Carry was charged with accepting food stamp coupons and Ohio Direction food stamp benefits in exchange for cash — trafficking in food stamps. Vernell Easter's actions were the basis for the charge and he was named as the "de facto operator" of the firm (Joint Ex. C). Felicia Easter replied to FNS stating that the store manager had been Robert Snyder, who was deceased after the investigation. The administrative decision rejected Felicia Easter's explanation under the apparent assumption that the food stamp trafficking occurred at the store and Mr. Snyder made nor attempted any effort to prevent Vernell Easter's criminal activity and therefore "it can only be construed that Vernell Easter prevailed over Snyder relative to the store's management" (Joint Ex. D). Further the determination stated that the proceeds were deposited directly for the benefit of Felicia's Cash and Carry. (*Id.*).

Findings of Fact:

Plaintiff, Felicia Easter is the owner of a store doing business as Felicia's Cash and Carry which she purchased in 1999 (TR. 127). At the time Felicia Easter was in her third year of law school at Ohio State University and was living in Columbus, Ohio (TR. 118, 128). She tried to come to Akron on weekends as often as she could to check on the store and see her son (TR. 119). She had one employee, Robert Snyder, running the store from the time it was purchased (TR. 134) until his death in July 2001 (TR. 134, 135). Snyder would open the store at 8:30 a.m., stay there all day, and close it at 7:30 p.m. six days a week and on Sunday the hours were 8:00 a.m. to 3:00 p.m. (TR. 137). Only Robert Snyder and Felicia Easter had keys to the store (TR. 137). Vernell Easter did not have

5:02 CV 0684                                             3

a key, was never employed by Felicia Easter and had no ownership interest in that store (TR. 136-37). The parties stipulated that Vernell Easter purchased with cash Food Stamp Benefits from a government undercover agent Kenneth Burnett in 11 transactions between March 3, 2000 and August 3, 2000, and that Vernell Easter was ultimately convicted in state court of trafficking in Food Stamp Benefits (Joint Stipulation, Docket No. 38).[1]

Burnett would meet Vernell Easter at his residence at 342 Turner Street, Akron, Ohio, known as the Blue Room (a gambling house). Vernell Easter would pay Burnett in cash or food stamps and for Electric Benefits Transfer (EBT) cards. For transactions involving EBT cards, Vernell Easter and Burnett would go to Felicia's Cash and Carry located at nearby 340 Turner Street and Vernell Easter would swipe the card at the Point of Service (POS) machine in order to check the amount of benefits available (Defendants' Exhibits A, B, D, E, F, G, H. I, J, and K). The final transaction on August 3, 2000 took place entirely in the store. Burnett would provide Vernell Easter with personal identification numbers [PIN] to enable Vernell Easter to read the EBT card balances on the POS machine.

All the stamp trafficking transactions occurred between the hours of 1:00 p.m. and 3:00 p.m. while the store was open to the public. (Defendant's Exhibits A-K). Department of Agriculture Special Agent James Owens briefed Kenneth Burnett, checked him for contraband, provided him with

---

[1] Kenneth Burnett had been an employee of the City of Cleveland Police Dept. and the Cuyahoga County Sheriff. He also worked in undercover capacity for the Department of Agriculture, Federal Bureau of Investigation and Drug Enforcement Aging (TR. 43-44).

5:02 CV 0684                                                         4

recording monitoring devices, and then debriefed him immediately after each transaction and documented in his reports what transpired (Defendants Exhibit A- K, TR. 21, 34-35)[2] In Defendant's Exhibits A through J, Agent Owens recorded that Vernell Easter paid Burnett cash for the food stamps and cards from a large wad of cash carried in his pants pocket. (Defendant's Exhibits A, B, C, D, E, F, G, H, I, J). Only the August 3, 2000 debriefing notes failed to mention that Vernell Easter paid for the EBT card from his pants cash stash.

There are discrepancies between the narrative summaries of Burnett's debriefing by Special Agent Owens and Burnett's testimony. Burnett could not remember the name of the store where the trafficking transactions took place (TR. 46); could not remember exactly how many times he went into Felicia's Cash and Carry stating it was four-five-six or seven times (TR. 46). A key point is whether Felicia Easter was aware of the illegal food stamp trafficking. Burnett testified that he met Felicia Easter (TR. 50); Burnett testified that Vernell Easter introduced him to her and that she gave Burnett the telephone number to the store where he could reach her (TR. 53). Burnett's testimony implied Felicia Easter was involved in her uncle's illegal food stamp trafficking (TR. 53).[3] In his debriefing

---

[2] Special Agent James Owens testified that the conversations between Vernell Easter and Burnett were audio and video-recorded but the audio and videotapes were unavailable for trial (TR. 34-35). Owens had Internet to the audiotapes and prepared his narrative summaries (which were produced for trial) from the audio recordings (TR. 35-36) and what Burnett told him.

[3] With the exception when I seen Felicia, when he [Vernell Easter] introduced me to Felicia. She gave me the number to the store which I used to have to call later to find out if I could come back and get the original [EBT] cars that I left with him. . . Because sometimes the cards that I would leave, he wouldn't take all of the money allotted on the card off at that particular time, so I would have to leave the card with him to come b ack and get the card later to get the card reloaded so I could bring it back down to him with more money on it. (TR. 53).

5:02 CV 0684                                                5

narrative reports, however, Special Agent Owens made no mention of Felicia Easter (Defendant's Exhibits A-K) and Special Agent Owens testified he could not recall that Felicia Easter was ever present (TR. 36).

In all but one of the eleven transactions between Vernell Easter and Burnett, the reports of Agent Owens indicate that he was informed by Burnett that Vernell Easter paid him with cash from a large wad of cash in his pants pocket. (Defendant's Exhibits A-J). However Burnett's testimony was that Vernell Easter took money out of the cash register several times, not his pants (TR. 54). When confronted with this discrepancy Burnett stated "Maybe I told [Owens] he got it out of the cash register and put some in his pants." (TR. 73). Burnett also said that all these transactions occurred four years ago; that he did not remember what he did four years ago at a specific time or hour; that he does not remember exactly what he said to Owens four years ago but that he had no reason to disbelieve what Agent Owens had written in his reports (TR. 72, 73).

The government produced no evidence other than the statements of Burnett, which the court finds are not credible, that Vernell Easter had access to the cash register and that at times he had paid Burnett for the food stamp benefits with cash from the cash register. The government also presented no evidence whatsoever establishing that Vernell Easter was ever an employee, had keys to the store, or had an ownership interest in the Felicia Cash and Carry Store, nor did the government show that the proceeds of the food stamp trafficking were deposited to the store's account. The government

5:02 CV 0684                                                    6

requested a finding that Felicia's Cash and Carry's management permitted the trafficking to take place. Credible evidence, however, only shows that Vernell Easter had access to the "POS" card reader, which was located to be accessible to the public. The evidence presented only shows that anyone with an EBT card and PIN number could scan the card at a POS card reader to ascertain the card balance. The government put forth nothing to show that this practice of making card readers publicly-accessible was illegal, or that store management's participation was necessary for Vernell Easter to ascertain EBT card balances. Accordingly, Felicia Easter has shown that there was no credible evidence that the store's management permitted trafficking to take place. Felicia Easter has established that at no time did Vernell Easter have access to the store's cash register nor did he open it or remove cash from it in order to purchase food stamp benefits from the cooperating witness.

*Conclusions of Law:*

A retail food store may be permanently disqualified from participating in the food stamp program if the store has engaged in the trafficking in food stamps. 7 U.S.C. 2021(b). Pursuant to 7 U.S.C. §2023(a)(15) and 7 C.F.R. §279.7(c) the district court must conduct a "trial de novo." This means that the court is not limited to the administrative record and may consider new evidence. See *Castillo v. U.S.*, 989 F.Supp. 413 (D. Conn. 1997); *Ramirez v. U.S.*, 514 F.Supp. 759 (D. P.R. 1981); *Ibrahim v. U.S.*, 834 F.2d 52 (2d Cir. 1987); *Abdelaziz v. U.S.*, 837 F.2d 95, 98 (2d Cir. 1988). The store was permanently disqualified from the food stamp program, but the complaint does

5:02 CV 0684                                              7

not seek a determination that this sanction was arbitrary or capricious. Compare, *Cross v. U.S.*, 512 F.2d 1212 (4th Cir. 1975); *Bordelon v. Block*, 810 F.2d 468 (5th Cir. 1986).

The evidence produced at trial did not provide the crucial nexus between the activities of Vernell Easter and Felicia's Cash and Carry. *Bakal Bros. Inc. v. U.S.*, 105 F.3d 1085 (6th Cir. 1997) emphasizes that the regulations provide that the store is responsible for food stamp trafficking by "personnel of the firm". *Id.* at 1089, see 7 C.F.R. §278.6(e)(1)(i). The government contends that the evidence established a nexus between food stamp trafficking of Vernell Easter and Felicia Easter, the owner of Felicia's Cash and Carry. The law requires more than a nexus to the store or store owner. There must be at least an agency relationship with the establishment. *Bakal Bros.*, 105 F.3d at 1089; *U.S. v. Truong*, 860 F.Supp. 1137 (E.D. La. 1994); *Freedman v. U.S.D.A.*, 926 F.2d 256 (3rd Cir. 1991); *Abelkhalik v. U.S.*, 1996 WL 41234 (N.D. Ill. 1996); 7 C.F.R. §278.6(e)(l)(i).

In the instant case, the government has only shown that Vernell Easter, a relative of the store owner, was involved in trafficking and without any evidence that he was "personnel of the firm," it does not appear that the government's actions were consistent with law. The trafficker being simply related to the owner of Felicia's Cash and Carry is insufficient grounds for punitive measures.

The government has counterclaimed under the false claims act [FCA] which provides that it is prohibited for "[a]ny person [to] knowingly present or causes to be presented, to an officer or

5:02 CV 0684                                     8

employee of the United States Government . . . false or fraudulent claims for approval." 31 U.S.C. §3729(a)(1). False statements or conduct must be material to the false or fraudulent claim to hold a person civilly liable. *U.S. ex. Rel. A+ Homecare, Inc. V. Medshares Mgt. Group, Inc.*, 400 F.3d 428, 442-44 (6th Cir. 2005). Liability is imposed only on one who "knowingly makes, uses, or causes to be made or used, a false record or statement or to get a false or fraudulent claim paid or approved by the government." *Id.*, and 31 U.S.C. §3729(a)(2). There is no credible evidence that Felicia Easter knowingly made or caused to be made or used a false statement to be paid for the fraudulent food stamp transaction.

The government also claims that it was defrauded by Felicia Easter. A major difference between common law fraud and FCA was the statutory elimination of the requirement to show specific intent to defraud, *Id.*, 400 F.3d at 444. Obviously if credible evidence cannot sustain an accusation under the FCA, then the government's common law fraud claim must fail.

Finally, the government claims Felicia Easter was unjustly enriched by Vernell Easter's activities. "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another and it arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss." 18 O.Jur.3d §343 (1988). The government has no evidence whatsoever to establish that the ill-gained

5:02 CV 0684                                                      9

funds from food stamp trafficking were received by Felicia Easter or the store, or saved other expenses.

Neither Felicia Easter nor Felicia's Cash and Carry can be held responsible for Vernell Easter's actions, and therefore, the determination by John Heslin, Chief of the Administrative Review Branch of the U. S. Department of Agriculture, Food and Nutrition Service, that Felicia's Cash and Carry be permanently disqualified from participation in the Food Stamp Program is set aside.

## *CONCLUSION*

The plaintiff prevails on her claim under 7 U.S.C. §2023 for judicial review of disqualification from the food stamp program.  The defendant is ordered to reinstate plaintiff in the food stamp program.  Plaintiff also prevails on the defendant's counterclaims.  Judgment will be entered accordingly.

s/James S. Gallas<br>
United States Magistrate Judge

Dated: April 26, 2005